UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:19-CR-41-CHB-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JOHN D. HELTON, | ) | |
| | ) | |
| Defendant | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant John D. Helton was indicted on July 5, 2019, for conspiracy to distribute methamphetamine, possession of a firearm in furtherance of drug trafficking, and possession with intent to distribute methamphetamine. D.E. 1. The charges rely on evidence obtained during warrant-based searches on June 9, 2019. The first search warrant targeted Helton's residence (where he lived with his wife and codefendant Nursilla Helton). The second targeted the residence of Helton's mother, Patsy Hopkins.

On October 28, 2019, Helton, through counsel, filed a motion to suppress "any and all evidence seized during the execution of [the] two search warrants." D.E. 43 at 1. District Judge Boom referred the motion to the undersigned. D.E. 44. The items seized from Helton's residence (warrant 19-SO-164) include "among other things, US currency, a 'large chunk of meth found in drawer in closet area of camper,' other quantities of methamphetamine, marijuana, and multiple firearms." D.E. 43 at 1. Helton argues that:

> The affidavit in support of this search warrant failed to establish probable cause and a nexus to the residence. Much of the information contained in the affidavit was stale. The good faith exception of *Leon* cannot save the affidavit and warrant because the affidavit was bare bones. There is no minimally sufficient nexus to the

1

residence. Therefore, the search warrant was invalid, the search violated the Fourth Amendment, and the exclusionary rule applies.

*Id*. The items seized at the mother's residence (warrant 19-SO-165) include "US currency, multiple firearms, a quantity of methamphetamine, and a quantity of pills." *Id*. at 2. Helton argues that "[b]ecause the affidavit for this search relied almost exclusively on the evidence seized in 19-SO-164, the items seized should be suppressed as fruit of the poisonous tree." *Id*. The government filed a brief in opposition to the motion. D.E. 46.

The Court conducted a teleconference on November 15, 2019, to discuss, among other things, whether an evidentiary hearing is necessary. D.E. 50. The parties agreed that if the first search warrant was valid (based on an analysis of the affidavit), then there would be no need to introduce additional evidence. *Id*. The Court took under advisement whether to conduct a hearing. *Id*.

No hearing is necessary and suppression is not warranted. Although the affidavit supporting the first search warrant was less than ideal, applying proper deference to the state judge who issued the warrant, the affidavit was sufficient to establish probable cause. It also contained an adequate nexus between the residence and the suspected drugs. In the alternative, suppression is inappropriate because the officers had reason to execute the warrant in good faith. Because the first warrant was valid, there is no need to assess whether the second warrant was the "fruit of the poisonous tree."

**I. General Legal Standards**

Helton argues that the affidavit supporting the warrant to search his residence "(1) [] was based almost exclusively on uncorroborated hearsay statements of questionable veracity from confidential informants whose reliability was not established and (2) there was an insufficient nexus between the alleged illegal conduct and the personal residence." D.E. 43-1 at 6.

2

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. It provides, in relevant part, that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A state search warrant being challenged in a federal court must be judged by federal constitutional standards. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). To properly support a warrant, the affidavit must contain "adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). These supporting facts need not be based on the direct knowledge and observations of the affiant; they may also come from hearsay information supplied by an informant. *Id*. "From whatever source, the information presented must be sufficient to allow the official to independently determine probable cause; the judge's action "cannot be a mere ratification of the bare conclusions of others." *Id*.

Probable cause is defined as reasonable grounds for belief; probable cause requires more than mere suspicion, but it does not require *prima facie* proof. *Abernathy*, 843 F.3d at 249. The critical element is that there must be reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought. *Id*.

When the request is to search for drugs, law enforcement need only show a fair probability that the drugs will be found in a particular place. *Abernathy*, 843 F.3d at 249. Put succinctly, "Probable cause exists where there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (quoting *United States v. Greene*, 250 F.3d 471, 479 (6th Cir.2001)).

Concerning this "nexus" requirement, when the place is a home and the evidence is drugs, "a court issuing a search warrant 'may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking.'" *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quoting *Williams*, 544 F.3d at 687). This is because, "in the case of drug dealers . . . evidence is likely to be found where the dealers live." *Id*.

When determining whether an affidavit establishes probable cause, courts look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant. *Abernathy*, 843 F.3d at 249. In reviewing a magistrate's decision to issue a warrant, the Court must accord the magistrate's determination great deference. *Id*. at 250. The question is whether the magistrate had a "substantial basis" for finding the affidavit established probable cause. *United States v. Braden*, 248 F. App'x 700, 702 (6th Cir. 2007) (quoting *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)). And courts should review the sufficiency of the affidavit "in a commonsense, rather than hypertechnical manner." *Greene*, 250 F.3d at 479.

## II. Text of the Affidavit

Both parties' briefs describe the events that preceded Knox County Sheriff's Deputy Sam Mullins preparing the search-warrant affidavit. D.E. 43-1 at 1-3; D.E. 46 at 1-6. The Court will not delve into those events because its analysis is limited to the "four corners" of the affidavit itself. *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005); *but see United States v. Christian*, 925 F.3d 305, 314-19 (6th Cir. 2019) (en banc) (Thapar, J. concurring) (arguing that the "four corners" rule is inconsistent with Supreme Court precedent).

The relevant text from the affidavit is as follows:

> Affiant has been an officer in the [Knox County Sheriff's Office] for a period of 6 years and information and observations contained herein were received and made in his capacity as an officer thereof.

> Deputy Sam Mullins [the affiant] had received numerous drug complaints at the above residence that John Helton was selling methamphetamine. A reliable source advised he was at the residence a few days ago when a subject he was with purchased a half pound of methamphetamine. On 06/09/2019 deputies went to the residence of John Helton to execute a warrant. Upon arrival Helton had a clear baggie that appeared to ha[ve] residue in it and a sum of US currency in small bills. This deputy has experience and knowledge that there [are] illegal narcotics on the property.

D.E. 43-4 at 2.

### III. Analysis

The facts contained in the affidavit essentially break down as follows:

(1) "[N]umerous drug complaints" were received involving Helton, the residence, and methamphetamine sales.

(2) A source considered reliable reported he had been present at the sale of a half-pound of meth at the residence "a few days ago."

(3) The same day the search warrant issued, deputies encountered Helton at his residence "to execute a warrant" and found him in possession of a baggie of "residue" and unspecified currency in small bills.[1]

(4) Deputy Mullins, relying on his "experience and knowledge," believed illegal narcotics would be found "on the property."

Because Helton addresses each of these four fact-clusters individually (D.E. 43-1 at 6-11), the Court's analysis will consider them one-at-a-time, keeping in mind that the required analysis is based upon the totality of the circumstances.

As previously explained, the question before the Court is whether this information, taken as a whole, was enough to provide a substantial basis for the issuing judge to find there was a fair probability that evidence of a drug crime would be found at Helton's residence. Granting appropriate deference to the issuing judge and taking a commonsense approach, the answer to this

---

[1] Helton informs the Court that the arrest warrant was "from Whitley County on charges of trafficking in a controlled substance, first degree, methamphetamine, first degree, heroin, and persistent felony offender." D.E. 43-1 at 2. Because the charges supporting the arrest warrant are not contained in the affidavit, the Court will not rely on the basis of the arrest warrant in its analysis.

question is yes.  The above four clusters of facts, taken together, are cross-corroborative and permit the warrant to be upheld on review.

### A.  The "Numerous Drug Complaints"

First, the affidavit references "numerous drug complaints at the above residence that John Helton was selling methamphetamine."  D.E. 43-4 at 2.  There is no detail as to how many "complaints" there were, who made the complaints, or when they were lodged.  But the affidavit does link them to Helton, the identified residence, and sales of methamphetamine.

The use of the word "complaints" suggests these reports were tips lodged by citizens outside the criminal milieu.  Those involved directly in committing crimes do not typically "complain" to authorities about them.  Information like this must be evaluated within a spectrum. On end of the spectrum, when information comes from a confidential informant within the criminal milieu, courts proceed with skepticism, and probable cause may hinge upon evidence of the informant's reliability, veracity, and basis of knowledge.  *United States v. Ketzeback,* 358 F.3d 987, 991 (8th Cir. 2004).  On the other end of the spectrum, non-criminal witnesses and victims whose identities are known are genereally presumed to be reliable.  *United States v. Saulsberry*, 878 F.3d 946, 950 (10th Cir. 2017).  The "complaints" in this case appear to fall somewhere in the middle—citizen sources whose identities are not provided.

Thus, although Helton argues the "complaints" should be analyzed under the standards for confidential informants who participate in crime (D.E. 43-1 at 4, 6), nothing in the affidavit actually suggests that fact cluster (1) contains information obtained from confidential informants. "Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen [in the position of a crime witness]."

6

*Griffin v. City of Detroit*, 996 F.2d 1215 (6th Cir. 1993) (table) (quoting *Easton v. City of Boulder, Colorado,* 776 F.2d 1441, 1449 (10th Cir.1985), *cert. denied,* 479 U.S. 816 (1986)).

> The lower courts have rather consistently held that the proof-of-veracity rules which obtain in informant cases are not applicable with respect to other sources of information. This result has been reached when the source of the information has been characterized as a 'victim' or 'eyewitness to the crime,' a 'citizen eyewitness,' 'complaining witness,' 'a cooperative citizen,' a 'concerned citizen,' 'an ordinary citizen,' 'an average citizen,' a 'citizen informant,' 'an informant not from the criminal milieu,' a 'citizen-informer,' or a 'nonprofessional informant.'
>
> . . . .
>
> A citizen informant's presumed credibility stems not only from the fact that he is not a professional informant or person interested in receiving some benefit by pointing to another, but also because the citizen eyewitness is "seldom involved with the miscreants or the crime." [Thus, the] reliability of an informant who is identified as a victim-witness to a crime, rather than a professional informant, need not be established in the officer's affidavit[.]

*United States v. Taylor*, No. 05-20052-BC, 2007 WL 851600, at *7 (E.D. Mich. Mar. 20, 2007) (citations and quotation marks omitted). Because the "numerous drug complaints" could have appeared on their face to the issuing judge to be from complaining citizens (not confidential informants from the criminal milieu), the "complaints" are not automatically subject to skepticism that must be overcome by further details.

The "complaints" are also corroborated by the other facts in the affidavit. The affidavit goes on to report that a known (but unidentified) source reportedly witnessed a methamphetamine transaction at the residence and that Helton was later arrested just outside the residence with a baggie containing residue. In other words, the noted and admittedly vague "complaints" are corroborated, and therefore strengthened, by more specific and timelier data contained in the affidavit.

Helton argues that the "numerous drug complaints" must be treated as stale because no dates for the complaints are provided. D.E. 43-1 at 7. Even so, the more recent clusters of facts at (2) and (3) work to counteract any staleness inherent in (1). "[W]here recent information corroborates otherwise stale information, probable cause may be found." *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (quoting *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988)). Even when some information in an affidavit is "stale," more recent events described in the affidavit can "refresh[] this otherwise stale information." *Id*. Facts clusters (2), based on events "a few days ago" and (3), based on events the same day the search warrant was sought, therefore refresh any staleness inherent in fact cluster (1) because all three fact clusters concern drug activity connecting to Helton and the residence.

In conclusion, although (1) may lack the potency to establish probable cause on its own, the report of "numerous drug complaints" does carry some weight in favor of finding probable cause.

### B.  The "Reliable Source"

The second fact cluster is that "[a] reliable source advised he was at the residence a few days ago when a subject he was with purchased a half pound of methamphetamine." D.E. 43-4 at 2. This assertion would doubtless be stronger if the affiant had provided some reasoning as to why he considers the source reliable (such as, for example, a history of reliable tips). More details about the transaction could also have strengthened this factual component. But again, fact cluster (2), undeveloped as it may be, is offered in the shadow of the "numerous complaints" and accompanied by the fact that Helton was later arrested at the residence with a baggie containing residue. So again, the fact clusters, taken together, reinforce each other to support probable cause.

As previously mentioned, when officers receive a tip from an informant within the criminal milieu, the court should "consider the source's reliability, veracity, and basis of knowledge." *United States v. Jones*, 707 F. App'x 317, 319 (6th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)), *cert. denied*, 138 S. Ct. 935 (2018). In this case, the informant's "basis of knowledge" is that he claims to have been present during a drug deal (involving a specific quantity) at the residence. No facts are provided concerning the informant's reliability; there is only an assertion that he is a "reliable source." Nevertheless, the informant's veracity is bolstered by the fact that the report is somewhat inculpatory. Helton argues that the statement is not inculpatory because the "reliable source" described only his mere presence during another person's drug transaction with Helton. D.E. 43-1 at 8. Helton argues, "it would appear that the confidential informant was attempting to deflect blame to inculpate his companion, rendering the statement even less trustworthy." *Id*. The government is more persuasive when it notes, "the source of information placed himself in increased legal peril by admitting to a law enforcement officer that he traveled to Helton's residence with another individual who purchased a half pound of methamphetamine." D.E. 46 at 12. The fact that the source exposed himself to a potential charge of conspiracy or accomplice liability, the government argues, "adds further reliability to the informant's statement." *Id*. The Court agrees that this information is sufficiently inculpatory to indicate general reliability.

When a confidential informant implicates himself in criminal activity as described in an affidavit, "Such a declaration against penal interest carries its own indicia of reliability." *United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir. 1976) (citing *United States v. Harris*, 403 U.S. 573, 583-84 (1971)); *see also United States v. Braden*, 248 F. App'x 700, 703 (6th Cir. 2007). An admission against penal interest "is a significant, and sometimes conclusive, reason for crediting

9

the statements of an informant." *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) (quoting *Armour v. Salisbury*, 492 F.2d 1032, 1035 (6th Cir. 1974)). Here, the report of the "source" contains admissions against penal interest because the source informed law enforcement he was present and "with" a person who purchased a large quantity of methamphetamine. Fact cluster (2) on the whole adds some weight to the finding of probable cause.

Helton also argues, most importantly in his view, that statement (2) is stale. D.E. 43-1 at 8. The affidavit states the witnessed the purchase of a half-pound of meth at Helton's residence "a few days ago." Staleness is not measured solely by counting days on a calendar; rather it depends on the "inherent nature of the crime." *Spikes*, 158 F.3d at 923 (quoting *Henson*, 848 F.2d at 1382).

> In analyzing whether information is stale, this Court considers the following factors:
>
> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
>
> (2) the criminal (nomadic or entrenched?),
>
> (3) the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), and
>
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Young*, 847 F.3d 328, 347 (6th Cir. 2017). "As these variables demonstrate, even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises." *Spikes*, 158 F.3d at 923.

The time frame of "a few days ago" in Helton's affidavit does not qualify as stale. The affidavit also states that "numerous drug complaints" have been lodged, suggesting that Helton

10

has an ongoing business of selling drugs from a secure operational base.  Indeed, a dealer's own home often qualifies as such an entrenched base for criminal activity.  Further, as described in cluster (3), officers had reason to believe that illegal contraband (reasonably supported by the word "residue") existed at the residence on the day of the search.  Accordingly, other fact-clusters in the affidavit counteract any staleness.

### C.  The Arrest of Helton

According to the third cluster of facts, "On 06/09/2019 deputies went to the residence of John Helton to execute a warrant.  Upon arrival Helton had a clear baggie that appeared to ha[ve] residue in it and a sum of US currency in small bills."  D.E. 43-4 at 2.  The reference to an unspecified "sum of US currency in small bills" does not significantly contribute to the probable cause analysis because carrying small bills is not incriminating.  Nevertheless, this cluster of facts ties together Helton, his residence, and drugs.  Clearly the implication concerning the "baggie" is that the affiant believed the "residue" was residue from methamphetamine.  This implication flows from the other three fact clusters.  Thus, the affiant's own first-hand observations corroborated the "complaints" and the report of the "reliable source."  The apparent "residue" discovered with Helton at his arrest on his property constitutes independent police corroboration of the preceding hearsay reports.  Fact cluster (3) would doubtless be stronger if it contained more details (such as, perhaps, a report of a field test of the residue).  But officers are not required to submit perfect affidavits and this fact cluster cannot be read in isolation.  This cluster also contributes some weight toward a finding of probable cause.

### D.  The Officer's Opinion

Tying (1), (2), and (3) together is item (4), which contains the opinion of the affiant:  "This deputy has experience and knowledge that there [are] illegal narcotics on the property."  D.E. 43-

11

4 at 2. This sentence, though not containing facts, does contribute toward a finding of probable cause. An issuing judge "may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003) (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)); *see also United States v. Melton*, No. 6:18-CR-48-REW-HAI, 2019 WL 1521979, at *4 n.5 (E.D. Ky. Apr. 8, 2019). The issuing judge in this case could therefore have relied upon the affiant's opinion as enhancing the strength of the affidavit's facts, which includes the hearsay statements and the implied fact that the "residue" found on Helton was methamphetamine.

### E. The "Nexus"

Finally, Helton argues the affidavit fails to establish "sufficient nexus between the place to be searched and the evidence to be sought." D.E. 43-1 at 10. To be clear, he is not arguing the affidavit lacks *particularity* in identifying the place to searched. The Sixth Circuit recently explained: "Generally speaking, to find probable cause justifying a warrant, we require a 'nexus between the place to be searched and the evidence sought.'" *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

Helton argues the affidavit does not sufficiently tie the "residue" described in (3) to the "residence" itself. D.E. 43-1 at 10. But the affidavit must be read in its totality. First, the "drug complaints" in (1) are specifically tied to "the above residence" described in the affidavit. Second, the half-pound meth purchase in (2) is said to have occurred "at the residence a few days ago." These two sets of reports, associated specifically with the "residence," are sufficient to tie Helton's baggie of "residue" to the residence itself and not just to Helton. A contrary conclusion can only

12

be reached by atomizing the facts in the affidavit rather than integrating them. The affidavit plainly states that the suspected residue was found "upon arrival" at the residence of John Helton and that he had it. Helton finds the phrase "on the property" in (4) to be too vague. D.E. 43-1 at 11. But, of course the "residence" (a white trailer) is one of the locations "on the property." The Court cannot read "on the property" as somehow *excluding* the residence, particularly when "the residence" is the locus of both the "complaints" in (1) and the informant's report in (2). This is not a case where the affidavit merely suggests that the owner of the property is suspected of a crime. The focus on the phrase "on the property" in isolation is the type of hypertechnical analysis prohibited in this context.

The Court must also consider that this is a drug trafficking case. The Constitution's general "nexus" requirement

> is refined when the place is a home and the evidence drugs. "[I]n the case of drug dealers," we have observed, "evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (citation, internal quotations, and alteration omitted). And so a court issuing a search warrant "may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008).

*Crawford*, 943 F.3d at 308. This inference should apply in this case, where the affidavit clearly alleges Helton is a drug dealer. Applying this drug-trafficker rule and considering the affidavit in its entirety, the issuing judge properly found a sufficient nexus to Helton's residence.

### F.  Conclusion on Probable Cause

The affidavit's contents provided the state judge with substantial basis to find a "fair probability" (beyond mere suspicion) that evidence of drug trafficking would be found at the residence. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). When taken together, the fresher facts revive the staler facts, the fact clusters corroborate each other, and the context generates a sufficient nexus to the residence.

The Sixth Circuit's recent *Christian* case provides useful guidance. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (en banc), *cert. denied*, No. 19-5782, 2019 WL 5150664 (U.S. Oct. 15, 2019). There, as here, "With the benefit of hindsight, perhaps the affiant could have been more precise." *Id*. at 310. But case law does not require "an exacting degree of specificity." *Id*. "[P]olice officers are mostly non-lawyers who must draft search-warrant affidavits 'on the basis of nontechnical, common-sense judgments.'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 235-36 (1983)). As in *Christian*, Helton's affidavit was performed in "haste:" the affidavit was composed and the search was conducted on the same day as Helton's arrest on a different warrant. *Id*.

This conclusion is buttressed by the deference this Court must give to the state judge who issued the warrant. *Abernathy*, 843 F.3d at 250. Because the warrant issued, this Court is not writing "on a blank slate." *Christian*, 925 F.3d at 311. The probable-cause standard is "undemanding." *Id*. It is not a "high bar" to clear. *Id*. And review of another court's decision is "deferential." *Id*. Case law requires the Court to "look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit." *Id*. at 312. Applying these standards, the state judge's probable-cause determination passes constitutional muster.

In contrast, Helton's approach to the affidavit demonstrates the sort of technical, line-by-line scrutiny this Court is forbidden to apply. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) ("[L]ine-by-line scrutiny [of an underlying affidavit is] inappropriate in reviewing [a] magistrate['s] decisions." (quoting *Illinois v. Gates*, 462 U.S. 213, 246 n.14 (1983)). Granting proper deference, the warrant and resulting search should be upheld as valid.

## IV. Good Faith

Even if the warrant failed to establish probable cause (which includes an appropriate nexus to Helton's residence), the good-faith exception would save the search from the exclusionary rule. The good-faith inquiry is confined to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)).[2] The conclusion that the officers' reliance on the warrant was objectively reasonable requires a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause. *Id*.

The exclusionary rule serves to deter police misconduct. *Leon*, 468 U.S. at 916. Application of the exclusionary rule requires the reviewing court to balance the deterrence benefits of suppression with its heavy costs, focusing on the "flagrancy of the police misconduct" at issue. *Davis v. United States*, 564 U.S. 229, 237-38 (2011) (quoting *Leon*, 468 U.S. at 909, 911). "[T]he deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." *Id*. at 238 (quoting *Herring v. United States*, 555 U.S. 135, 143 (2009)). When police act with deliberate, reckless, or grossly negligent disregard for the Fourth Amendment, "the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id*. (quoting *Herring*, 555 U.S. at 144).

The good faith exception to the exclusionary rule allows for the admission of evidence even when the warrant is later held invalid. *Davis*, 564 U.S. at 238-39 (quoting *Leon*, 468 U.S. at 922). "[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in

---

[2] Helton notes an apparent split within the Sixth Circuit as to whether the Court may consider information outside the "four corners" of the affidavit in conducting the "good faith" analysis. D.E. 43-1 at 12. He argues that information outside the affidavit should not be considered. *Id*. Without analyzing the split, the undersigned applies the approach suggested by Helton.

15

objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id*. at 921. However, suppression remains an appropriate remedy when the officer's reliance on the magistrate's probable cause determination and the technical sufficiency of the warrant is not objectively reasonable. *Id*. at 922. Suppression is appropriate if the judge was misled by information in an affidavit because the affiant knowingly provided false information or acted with reckless disregard as to its truth, if the judge wholly abandons his judicial role, when the officer relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or when the warrant is facially deficient by failing to identify the place to be searched or the things to be seized. *Id*. at 923.

Helton argues that the affidavit was not executed in good faith because it was "bare bones." D.E. 43-1 at 11-15. The Sixth Circuit reserves the label "bare bones" for "for an affidavit that merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Christian*, 925 F.3d at 312 (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)). And, "to be considered bare bones, an affidavit must be 'so lacking in indicia of probable cause' as to make an officer's 'belief in its existence [ ] objectively unreasonable.'" *Id*. (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). Establishing that an affidavit is not "bare bones" involves a "less demanding" showing than the inquiry into whether there is a "substantial basis" supporting a finding of probable cause. *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006); *Laughton*, 409 F.3d at 748-49.

16

Here, as explained, Helton's affidavit is not lacking in indicia of probable cause. It cites specific facts, including a history of "drug complaints," a report by an informant with personal knowledge, and the discovery of "residue" in a baggie upon Helton's arrest on the property.

In this case, as in *Higgins*,

> there is no evidence that any circumstances are present that would negate the good-faith exception. There is no evidence that [Deputy Mullins] included false information in the affidavit; there is no evidence that the magistrate acted as a partisan rubber stamp; the affidavit . . . is not bare bones, and this court's precedents are not so clear as to make it "entirely unreasonable" to find probable cause based on such an affidavit; and there has been no showing that the warrant was so obviously deficient that official reliance on it was objectively unreasonable.

*Higgins*, 557 F.3d at 391. Although the affidavit concludes, "This deputy has experience and knowledge that there [are] illegal narcotics on the property" (D.E. 43-4 at 2), this conclusion is backed up with three clusters of specific facts. It is not so bare-bones as other affidavits where the good-faith exception was found not to apply. *See Christian*, 925 F.3d at 312-13. The following can also be said about this case:

> Although one can split hairs with the affidavit in this case, it is impossible to deny that it contains factual allegations, not just suspicions or conclusions. Importantly, each factual allegation, regardless of any infirmities, at least purports to link [Helton] to drug trafficking at [his residence]. An affidavit need only present "*some* connection, regardless of how remote it may have been," *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (quoting *Laughton*, 409 F.3d at 749–50), or, in other words, establish a "minimally sufficient nexus between the illegal activity and the place to be searched," *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc)), to avoid the bare-bones designation and thus be one upon which an officer can rely in good faith. The affidavit here necessarily satisfies this low requirement.

*Id*. at 313. Here, the affidavit is not bare-bones and it establishes a minimally sufficient nexus between the illegal activity and the residence to be searched.

The exclusionary rule is about deterring police misconduct. *Leon*, 468 U.S. at 920-21. Isolated negligence does not justify suppression. *Davis*, 564 U.S. at 239. "[T]he crucial finding

17

needed to suppress evidence is whether 'police [mis]conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (quoting *Herring*, 555 U.S. at 144).

Assuming the warrant was invalid for lack of probable cause, there was no police misconduct here, much less flagrant misconduct. Thus, in the alternative, the officers executing the warrant did so in good faith.

### V. Conclusion

For the reasons discussed above, the undersigned **RECOMMENDS** that Defendant's motion to suppress (D.E. 43) be **DENIED.** As acknowledged by the defense during the November 15, 2019 teleconference, the valid warrant and resultant search moot the remainder of the motion. The Court therefore has no need to conduct an evidentiary hearing or consider fruit of the poisonous tree.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. Any objection must be filed within **fourteen days** of the entry of this order. Failure to object per Rule 59(b) waives a party's right to review. Upon expiration of that fourteen-day period, this matter will be submitted to Judge Boom for her consideration.

This the 26th day of December, 2019.



Signed By:
*Hanly A. Ingram*
**United States Magistrate Judge**