UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN D. HELTON AND ) <br> NURSILLA ANITA HELTON, ) <br> ) <br> Defendants. ) | Criminal Action No. 6:19-CR-041-CHB <br><br> **MEMORANDUM OPINION AND ORDER ON OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant John Helton's Objection to the Recommended Disposition of the Motion to Suppress ("Objections") [R. 62] wherein he recommends that the Court deny the Defendant's Motion to Suppress. [R. 58] The Motion to Suppress seeks to exclude all evidence seized during the execution of two search warrants, one for Defendant's residence and the other for his mother's residence. [R. 43 p. 1-2; R. 58 p. 1] The matter is now ripe for the Court's review. This Court must make a *de novo* determination of those portions of the Recommended Disposition to which objections are made. 28 U.S.C. § 636(b)(1). Because the Court agrees with the Magistrate Judge's analysis and because the Defendant's Objections otherwise fail to rebut the reasoning of the Magistrate Judge, the Recommended Disposition will be accepted as the opinion of the Court.[1]

---

[1] Though Defendant Nursilla Helton joined in Defendant John Helton's Motion to Suppress [R. 48; R. 50], she neither filed objections to the Recommended Disposition nor sought an extension of time to do so. Fed. R. Crim. P. 59(b). The Court need not review a magistrate judge's findings when no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985). Nevertheless, the Court has examined the record and agrees with the Magistrate Judge's Recommended Disposition. Therefore, the Recommended Disposition will be adopted as to Defendant Nursilla Helton as well.

The Recommended Disposition properly found that there was no basis for exclusion of the evidence in question. [R. 58] Defendant John Helton ("Defendant" or "Helton") made a series of objections to Judge Ingram's ruling, as follows: the affidavit supporting the first search warrant failed to establish probable cause for Defendant's residence and a nexus to the residence; the good faith exception does not apply because the affidavit was bare bones; the exclusionary rule should apply; and the fruit of the poisonous tree doctrine warrants exclusion of evidence found during the second search. [R. 62] The Defendant's Objections are addressed in turn below.[2]

I.  **Objections**

   A.  **Sufficiency of the Affidavit for Search Warrant 19-SO-164 (Defendant's Residence)**

Defendant's first series of objections centers around the sufficiency of the affidavit supporting the first warrant, case number 19-SO-164 [R. 43-4], related to Defendant's residence. [R. 62 pp. 7–14] Defendant argues that Magistrate Judge Ingram erred in concluding that the affidavit provided enough facts to establish probable cause for the search of his residence. [*Id.*] The affidavit, in relevant part, states:

> Affiant has been an officer in the [Knox County Sheriff's Office] for a period of 6 years and information and observations contained herein were received and made in his capacity as an officer thereof.
>
> Deputy Sam Mullins [the affiant] had received numerous drug complaints at the above residence that John Helton was selling methamphetamine. A reliable source advised he was at the residence a few days ago when a subject he was with purchased a half pound of methamphetamine. On 06/09/2019 deputies went to the residence of John Helton to execute a warrant. Upon arrival Helton had a clear baggie that appeared to ha[ve] residue in it and a sum of US currency in small bills. This deputy has experience and knowledge that there [are] illegal narcotics on the property.

---

[2] The Magistrate Judge ably laid out the relevant facts in the Recommended Disposition. Rather than reviewing all these facts anew, the Court will address the facts of this case only to the extent necessary to rule on Defendant's Objections to the Recommended Disposition.

[R. 43-3 p. 2; R. 58 pp. 4–5]. "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (internal quotations omitted). To evaluate whether an affidavit provides probable cause, the Court may only look to the four corners of the affidavit. *See United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016).

Magistrate Judge Ingram broke the contents of the affidavit into four "fact clusters" for ease of analysis. [R. 58 p. 5] However, as Judge Ingram noted, when reviewing whether an affidavit supports a magistrate's probable cause determination, the Court must review the affidavit not in a hyper technical "line-by-line" manner, but a common sense one based on the totality of the circumstances. *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013); *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The Court must "look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019). After-the-fact scrutiny of an affidavit should not take the form of *de novo* review, rather, the Court must give the determination of the magistrate who issued the warrant "great deference." *Allen*, 211 F.3d at 973. The question is merely whether the magistrate had a "substantial basis" for finding that the underlying affidavit provided probable cause. *Id.; see also Abernathy*, 843 F.3d at 250.

### i. Reliability of Sources

Helton first argues that Magistrate Judge Ingram improperly gave too much weight to the first two fact clusters: the anonymous "numerous drug complaints" and information provided by the "reliable source." [R. 62 pp. 7–12] The second "fact cluster" contained in the affidavit, and the one that provides the strongest support for the warrant, states that a "reliable source advised

3

that he was at the residence a few days ago when a subject he was with purchased a half pound of methamphetamine." [R. 43-4] After all, the Sixth Circuit has previously held that an affidavit containing a named source's statement that he had seen the sale of drugs at a defendant's residence within the previous twenty-four hours presented a substantial basis for the magistrate to find probable cause for a search. *See United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986). Magistrate Judge Ingram discredited the conclusory reference to the source's "reliability" (no facts were given to establish this reliability), but found that the source had a strong basis of knowledge since he described a drug deal that he witnessed first-hand. [R. 58 pp. 8–9] Judge Ingram also found that the statement's veracity was bolstered by the fact that the information was potentially inculpatory because it placed the source at the scene of an illegal drug transaction and that it was corroborated by the other fact clusters in the affidavit. [*Id.*] Defendant objects to Judge Ingram's findings that the source's statement was reliable, that the statement was inculpatory, and that the information was not stale. [R. 62 pp. 10–12]

To evaluate information provided by a confidential source, the Court should "consider the source's reliability, veracity, and basis of knowledge." *United States v. Jones*, 707 F. App'x 317, 319 (6th Cir. 2017) (quoting *Gates*, 462 U.S. at 230)). "[I]nformation presented to the magistrate in the affidavit [must] be sufficient to allow 'that official' to assess probable cause independently, and not merely to rubber-stamp the affiant's conclusion." *United States v. Allen*, 211 F.3d 370, 975–76 (6th Cir. 2000). An affidavit must include sufficient supporting facts to demonstrate the reliability of an informant, but those facts "need not take any particular form." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). The affidavit could include corroboration of the informant's story, include details regarding why this informant is reliable, or contain some other indicia of the informant's reliability—such as the willingness of the

4

informant to reveal their name or a sufficiently detailed description of the informant's first-hand observations. *Id.* The Court need not accept that the source is "reliable" just because the affidavit describes them as such; without supporting facts, this is a conclusory assertion. *See Allen*, 211 F.3d at 975–76. Here, there are a number of factors that bolster the reliability of this source. These include the fact that the source's identity was known to the deputy affiant, the source described a transaction that he witnessed first-hand, the source potentially placed himself in legal peril by admitting his presence at a drug transaction, and other facts in the affidavit corroborate the source's information.

First, the source is not completely anonymous. If a source is named in an affidavit that reflects positively on his or her reliability. *See United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986); *see also United States v. Miller*, 314 F.3d 264 (6th Cir. 2002) (crediting a source named in the affidavit even though it was not clear whether the source actually knew he would be). While this source is not named in the affidavit, his statements are entitled to greater weight than a truly anonymous source, even though his identity was not disclosed to the issuing magistrate. *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005). This is because the police knew his identity, and he could be prosecuted for making a false report. *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (citing *May*, 399 F.3d at 824–25).

The source's first-hand description of witnessing a drug transaction at Defendant's residence also bolsters his credibility. "An admission against penal interest . . . is a significant, *and sometimes conclusive*, reason for crediting the statements of an informant." *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) (quoting *Armour v. Salisbury*, 492 F.2d 1032, 1035 (6th Cir. 1974)) (emphasis added). Defendant objects to Judge Ingram's finding that the statement implicated the source in criminal activity, since the source only claimed to have been

5

present during the transaction rather than directly participating in it. [R. 62 pp. 10–11] As support, Defendant cites Sixth Circuit Pattern Instruction 3.03(3), which states that "proof that a defendant simply knew about a conspiracy, or was present at times, or associated with members of the group, is not enough." [*Id.* p. 11] While mere presence at a crime scene is insufficient to establish a conspiracy charge on its own, presence is a material and probative factor. *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986). Even if this statement alone were insufficient for a jury to find the source guilty of a charge of conspiracy or accomplice liability, it is certainly inculpatory since it places him at the scene of a sale of half a pound of methamphetamine. As such, the statement is undoubtedly deserving of more weight than Defendant suggests.

Finally, "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of an alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Illinois v. Gates*, 462 U.S. 213, 234 (1983). The Sixth Circuit has upheld a warrant based solely on the statement of a named informant who stated that he had seen a defendant selling drugs at defendant's house within the last twenty-four hours. *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986). While, as discussed above, the source in this case is not named, he did provide a first-hand description of the sale of a half-pound of methamphetamine that occurred only a few days prior. [R. 43-4] Though lacking in additional details, it is still a first-hand account of the illegal sale of a substantial amount of methamphetamine at Defendant's residence.

The source's description of the drug transaction is also corroborated by other evidence provided in the affidavit, which strengthens its reliability. "The reliability of hearsay statements of a confidential informant may be corroborated by various means, including direct surveillance

6

or circumstantial evidence . . . ." *United States v. Smith*, 182 F.3d 473, 478 (6th Cir. 1999) (internal quotations omitted). The affidavit in this case provides other facts that corroborate the source's account: The first fact cluster in the affidavit provides that Deputy Sam Mullins (the affiant) had received "numerous drug complaints" that Defendant Helton was selling methamphetamine at his residence; the third fact cluster indicates that when deputies went to Defendant's residence to execute a separate warrant, he "had a clear baggie that appeared to ha[ve] residue in it and a sum of US currency in small bills"; and the fourth cluster provides that the affiant "has experience and knowledge that there [are] illegal narcotics on the property." [R. 43-4]

With regard to the first fact cluster, Defendant claims that Magistrate Judge Ingram erred in failing to analyze the credibility of the complaints under the standard provided in *Illinois v. Gates*. [R. 62 p. 7] Judge Ingram found that the issuing state judge could have found that the complaints were from private citizens outside of the criminal milieu because "those involved in committing crimes do not typically 'complain' to authorities about them." [R. 58 p. 6] Thus, Judge Ingram found that the complaints were not automatically subject to skepticism based on the reliability, veracity, and basis of knowledge factors outlined in *Illinois v. Gates*, because they could have been made by ordinary non-criminal citizens (as opposed to confidential informants). [*Id.* p. 7–8] Defendant argues that any enhanced deference is only applicable if a tipster's identity is known to law enforcement or the issuing magistrate, and assuming that the tipsters are unquestionably honest citizens just because the affidavit uses the word "complaint" is an unwarranted assumption. [*Id.*]

To the extent that Magistrate Judge Ingram found the complaints were not subject to scrutiny under the *Gates* factors because such factors are only relevant when evaluating the

credibility of information from confidential informants within the criminal milieu, the Court agrees with the Defendant's Objection. Affidavits based on anonymous tips (like here) require the same scrutiny regarding veracity, reliability, and basis of knowledge as those presented by a confidential informant. *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *see also Illinois v. Gates*, 462 U.S. 213, 230 (1983) (An anonymous informant's "'veracity,' 'reliability,' and 'basis of knowledge' are highly relevant in determining the value of his report."). As probable cause is evaluated based on the totality of the circumstances, a deficiency in one area can be counterbalanced by a strong showing in another. *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). In fact, these are relevant factors for evaluating any evidence in an affidavit—the proper analysis is not any specific "test," but one based on the totality of the circumstances. *Gates*, 462 U.S. at 230–31. For example, the veracity of an *identified* citizen informant can generally be presumed to be true absent a showing that the person should not be trusted. *See*, *e.g.*, *United States v. Saulsberry*, 878, 950 (10th Cir. 2017). This is not a distinct "test" for evaluating citizen informants, but rather an application of the totality of the circumstances analysis and specifically contemplated by *Gates*— a known "unquestionably honest citizen['s]" report of criminal activity is more believable because it would subject him to criminal liability if it was fabricated. *Gates*, 462 U.S. at 234.[3]

In this case there is little to measure the reliability, veracity, or basis of knowledge of these "numerous complaints." There is absolutely no information regarding the source of the complaints, the number of complaints, when they occurred, or any further details except that they

---

[3] The Tenth Circuit in *Saulsberry*, the case Judge Ingram relied on for the standard for citizen informants, specifically noted that the informant in that case identified himself as an employee of a business where the defendant had parked his car. *Saulsberry*, 878 F.3d at 950. By identifying where he worked, he "narrowed the likely class of informants and distinguished himself from a truly anonymous informant who has not placed his credibility at risk and can lie with impunity." *Saulsberry*, 878 F.3d at 950 (quoting *Florida v. J.L.* 529 U.S. 266, 275 (2000)).

involved the sale of methamphetamine. [R. 43-4] However, the Court agrees with Judge Ingram that the fact that the affidavits used the word "complaint" makes it more likely that these came from citizens outside the criminal world, but it cannot be said with certainty. As such, the complaints certainly would not be sufficient on their own to establish probable cause. They do, however, corroborate—even if only slightly—the "reliable source's" information as they are another data point in the "totality of the circumstances" suggesting that there was drug trafficking at Defendant's residence. This corroboration is further strengthened by the details that are included in the affidavit: just as the "reliable source," they tie Defendant's residence to the sale of *methamphetamine*, specifically.

Defendant also argues that the complaints were stale, since the affidavit contains no reference to when these complaints were made. [R. 62 p. 9] It is inappropriate to rely purely upon stale information in affidavits when making a probable cause determination. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). "Information is considered stale and unreliable if it is impossible to tell from the affidavit when the circumstances giving rise to probable cause occurred." *United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016). In this case, the Court cannot tell when these drug complaints were made, making them presumptively stale. *See id*. However, staleness is not meant to create an arbitrary time limitation within which facts must be presented to a magistrate, but rather is a relevant consideration when making a probable cause determination. *United States v. Henson*, 848 F.3d 1374, 1381–82 (6th Cir. 1988). "[W]here recent information corroborates otherwise stale information, probable cause may be found." *Spikes*, 158 F.3d at 924. While there is little to establish the reliability of these complaints, and they certainly would not provide a substantial basis for the search on their own, they are

circumstantial evidence that drugs, and specifically methamphetamine, was being sold at Defendant's residence.

The "reliable source's" account is also corroborated by the third fact cluster, which states that "[o]n 06/09/2019 deputies went to the residence of John Helton to execute a warrant. Upon arrival Helton had a clear baggie that appeared to ha[ve] residue in it and a sum of US currency in small bills." [R. 43-3] Defendant takes issue with the Magistrate Judge implying that the residue in the baggie was methamphetamine. [R. 62 p. 13] He argues that there was no field test done on the residue and that nothing in the affidavit suggested the residue was incriminating. [*Id.*] However, probable cause determinations necessarily involve inferences, and inferences are perfectly acceptable provided that they are based on facts in the affidavit. *United States v. Hython*, 443 F.3d 480, 489 (6th Cir. 2006). If police go to someone's residence to execute a warrant; find that person with a "baggie" containing "residue"; there have been complaints of methamphetamine trafficking at that residence; and an informant had told those police that he witnessed the sale of a half-pound of meth at that residence just a "few days ago," the inference that the residue in the "baggie" is meth is not nearly as large as Defendant claims, even given the reliability issues of the corroborating evidence. This context is critical for evaluating the baggie and residue. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (finding that a "divide-and-conquer approach [to facts in an affidavit] is improper, because a factor viewed in isolation is often more readily susceptible to an innocent explanation than one viewed as part of a totality") (internal quotations omitted).

The Sixth Circuit has routinely held that independent police corroboration of an informant's tip entitles the tip to significantly more weight. *United States v. Allen*, 211 F. 3d 970, 975 (6th Cir. 2000). The police corroboration in this case was not perfect, but it still bolsters the

"reliable source's" account of meth trafficking at Defendant's residence within the previous few days. Of course, field testing the residue—or if the officers did a field test, including the results in the affidavit—would have been the ideal thing to do. Defendant correctly notes that even including the officer's conclusion that the residue appeared consistent with a controlled substance in the affidavit would have been helpful. [R. 62 p. 13] These affidavits are written, however, by police officers who are "mostly non-lawyers who must draft search-warrant affidavits on the basis of nontechnical, common-sense judgments." *Christian*, 925 F.3d at 310. (internal quotations omitted). Given the drug activity described in the preceding two sentences and the deputy's opinion that there was narcotics in Defendant's residence in the following sentence, it is not exactly a mystery what the deputy meant when he described a "baggie" with "residue" in it. *See Florida v. Harris*, 568 U.S. 237, 248 (2013) (instructing courts to view the facts through the lens of common sense when evaluating probable cause). Moreover, if the officer did not believe the "residue" was drug residue he would not have included it in the affidavit since it would not have been relevant. As such, this fact cluster also corroborates the "reliable source" who witnessed the sale of a half-pound of methamphetamine at the residence only a few days prior.

Finally, the affidavit does contain the conclusions of the deputy that there were illegal narcotics on the property. [R. 43-4] "The issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003) (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1992)); *United States v. Lawson*, 999 F.2d 985, 988 (6th Cir. 1993). Defendant does not contest this other than to suggest that the opinion

11

contains no additional facts, but Defendant cites no caselaw for why this should prevent the Court from considering the deputy's conclusion. [R. 62 p. 13] Consequently, this provides additional support to find the state judge had a substantial basis for issuing the warrant.

### ii. Staleness of the "Reliable Source"

Defendant also objects to Magistrate Judge Ingram's finding that the information provided by the "reliable source" in the second fact cluster was not stale. [R. 62 pp. 11–12] Defendant analogizes the affidavit to the one provided in *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006). [R. 62 p. 12] In that case, the Sixth Circuit found that a single controlled purchase did not establish probable cause because there was no indication that the sale of drugs from the residence was ongoing. *Hython*, 443 F.3d at 485. However, in *Hython*, the affidavit described a single drug sale that failed to include the date of that sale entirely. *Id.* The Sixth Circuit found the complete absence of any date to be critical. *Id.* ("[W]ithout a date or even a reference to 'recent activity,' etc. there is absolutely no way to begin measuring the continued existence of probable cause."). By contrast, the affidavit in this case contains a timeframe for the claimed drug transaction— "a few days ago." The Sixth Circuit has also found information regarding drug transactions not to be stale in more attenuated circumstances than this. *See Young*, 847 F.3d at 347–48 (three to six week old information not stale in an alleged drug trafficking conspiracy); *United States v. Moore*, 661 F.3d 309, 313–14 (6th Cir. 2011) (an informant stating that he had seen a drug sale within the last five days was not stale); *United States v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000) (informant had seen defendant at his house in possession of cocaine within the previous seventy-two hours). *Cf. United States v. Frechette*, 583 F.3d 374,

378 (6th Cir. 2009) (holding that sixteen-month old information regarding the drug trade is usually stale).

In drug crimes, information can become stale quickly because drugs are usually sold and consumed in a prompt fashion. *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010). This changes, of course, if there is an indication that a defendant's residence was a location where there was an ongoing sale of narcotics. *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988). When considering whether information is stale, the Court considers:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
> (2) the criminal (nomadic or entrenched?),
> (3) the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), and
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Young*, 847 F.3d 328, 347 (6th Cir. 2017). Additionally, when recent information corroborates otherwise stale information probable cause can be found. *Henson*, 848 F.2d at 1381–82. Conspiring to distribute narcotics indicates a regenerating conspiracy. *Young*, 847 F.3d at 347. Moreover, while drugs are easily consumable, "narcotics underlying an ongoing conspiracy to traffic drugs are likely to be at an operational base." *Id.* Here, there are multiple references in the affidavit indicating that methamphetamine was at Defendant's residence, including a first-hand account witnessing a sale within the past week. [R. 43-4] Given the large quantity of methamphetamine witnessed by the source, it is reasonable to infer additional drugs were stored or kept at the residence. Moreover, this information was corroborated by officers who found Defendant with a baggie filled with residue on the day of the affidavit. [*Id.*] These factors establish that the evidence was not stale.

### iii. Nexus

Defendant also argues that the affidavit failed to establish a nexus between the baggie with residue found on the day of the warrant and Defendant's residence. [R. 62 p. 14] To find probable cause to justify a search warrant, there must be a nexus between the place to be searched and the evidence sought. *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). Defendant first argues that fact clusters one and two fail to establish a nexus to the residence because they are stale. [R. 62 p. 14] As discussed above, these fact clusters are not stale, and provide a direct link to the residence itself. Moreover, unlike the cases Defendant subsequently tries to analogize this case to, the affidavit provides a first-hand account of the sale of a half-pound of methamphetamine *inside the residence*, and only a few days before the affidavit was written. [R. 43-4] Reading the affidavit as a whole only further corroborates this finding: there were prior drug complaints about the residence, albeit of questionable reliability, and the deputy found that Defendant had a baggie with residue in it when they went to his residence to execute a warrant. *See Crawford*, 943 F.3d at 308 (an issuing magistrate may infer that drug traffickers use their homes to store drugs). The nexus requirement is easily met in this case.

When properly viewing the affidavit as a whole, the affidavit provided the issuing state judge with a substantial basis to find a fair probability that a search of Defendant's residence would uncover evidence of drug trafficking. The Court agrees with Magistrate Judge Ingram's conclusion that the contrary result is reached only by using the prohibited "divide-and-conquer" approach and viewing each part of the affidavit in isolation. *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 588–89 (2018)).

B. **Good Faith Exception**

Defendant also objects to Magistrate Judge Ingram's finding that even if the warrant failed to establish probable cause, the good faith exception would save the search from the exclusionary rule. [R. 62 p. 15] The purpose of the exclusionary rule is to deter police misconduct rather than punish the errors of magistrates. *United States v. Leon*, 468 U.S. 897, 916 (1984). As the costs of exclusion are high, it is only an appropriate remedy when the deterrence benefits outweigh those costs. *Davis v. United States*, 564 U.S. 229, 238 (2011). This occurs when police exhibit "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.* (internal quotations omitted). The good faith exception to the exclusionary rule does not bar from admission evidence seized in a "reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Christian*, 925 F.3d at 312 (quoting *Leon*, 468 U.S. at 905). One instance where the good faith exception is inapplicable is where the affidavit supporting the search warrant is "bare bones," such that it "merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* (internal quotations omitted).

Defendant claims that Judge Ingram erred in finding that the affidavit was not bare bones because the deputy affiant did not have prior personal knowledge of unlawful activity outside of fact clusters one and two. [R. 62 p. 15] Then, to discredit the information in fact clusters one and two Defendant argues they were stale. [*Id.*] An affidavit is bare bones when it is "so lacking in indicia of probable cause as to make an officer's belief in its existence objectively unreasonable." *Christian*, 925 F.3d at 312 (internal quotations omitted). This is a less demanding inquiry than one to determine whether there as a substantial basis for a magistrate's probable cause determination. *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006).

"If the reviewing court is able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched, then the affidavit is not bare bones and official reliance on it is reasonable." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (quoting *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005)).

The affidavit in this case contains a sufficient factual basis to meet this low bar. Defendant's Objections largely rest on the argument that the first two factual clusters, facts provided by the "numerous drug complaints" and the "reliable source," are stale and should not be considered. [R. 62 pp. 17–18] As previously discussed, the reliable source's account from only a few days before the affidavit regarding drug trafficking is not stale, and Defendant cites no Sixth Circuit cases which would indicate otherwise. *Cf United States v. Hython*, 443 F.3d 480, 489 (6th Cir. 2006) (finding a single account of a sale of drugs stale because the affidavit contained *no date at all*). There are also underlying factual circumstances that bolster the reliability and veracity of the source's account. *See*, *supra*, Section I.A.i. Evaluating this information with the other corroborating facts in the affidavit, there is enough of a factual basis to make reliance on the affidavit reasonable. Finally, Defendant's attempt to analogize the affidavit to *United States v. McPhearson* fails because the affidavit provides specific facts linking his residence to the sale of drugs. *McPhearson*, 469 F.3d at 526–27 (holding that an affidavit was bare bones where the only evidence was that a defendant was found with drugs on him outside his residence). This analogy likewise relies on the Court disregarding fact clusters one and two. Even assuming that the affidavit did not contain enough to provide the state judge with a substantial basis to find probable cause, the affidavit was not bare bones, and the officers were reasonable in relying upon it.

C.  **Search Warrant 19-SO-165 (Defendant's Mother's House)**

Defendant's Motion to Suppress argued that the second search warrant (19-SO-165) for the search of the house belonging to Defendant's mother was also invalid under the fruit of the poisonous tree doctrine. [R. 43-1 pp. 17–19] However, Magistrate Judge Ingram found that if the first search warrant (19-SO-164) for Defendant John Helton's house was valid, this would moot the remainder of Defendant's Motion to Suppress. [R. 58 p. 18] Defendant acknowledged this in a teleconference with Magistrate Judge Ingram, and Defendant has not objected otherwise. [*Id.*] Since the Court holds that the first search was supported by probable cause, the second search is not tainted as fruit of the poisonous tree.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The **Recommended Disposition** [**R. 58**] is **ADOPTED** and is entered as the findings and conclusions of the Court.

2. Defendant John Helton's **Objection to the Recommended Disposition of the Motion to Suppress** [**R. 62**] is **OVERRULED**.

3. The Defendants' **Motion to Suppress** [**R. 43**] is **DENIED**.

This the 7th day of February, 2020.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY